UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| ARTHUR T. CHESTER, III, | : | |
| --- | --- | --- |
| | : | Civ. No. 17-39 (RBK) (KMW) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| CAPE MAY COUNTY, et al., | : | |
| | : | |
| Defendants. | : | |

**ROBERT B. KUGLER, U.S.D.J.**

      This matter comes before the Court by way of Plaintiff Arthur T. Chester, III's Complaint, asserting violations of the First, Fourth, Eighth, and Fourteenth Amendments, under 42 U.S.C. § 1983. Presently before the Court is Defendants' Motion for Summary Judgment. (ECF No. 25). For the reasons set forth below, the Court will grant Defendants' motion.

## I.     BACKGROUND

      This case arises from Plaintiff's pretrial detention at the Cape May County Correctional Center. On June 10, 2015, Plaintiff entered the jail as a result of his arrest for burglary and related charges. Plaintiff alleges that upon entering the jail, he informed Defendants Logue or Schienk that he had a "no-contact order" against a fellow inmate, Aaron Shelton, who was the leader of the bloods gang members in the jail.[1] Plaintiff feared Mr. Shelton and other bloods members because Mr. Shelton burglarized Plaintiff's home and Plaintiff testified against Mr. Shelton.

---

[1] Plaintiff was apparently referring to a police department's initial general complaint report. That report notes that a court set bail for Mr. Shelton, which included a no-contact order with the Plaintiff. (ECF No. 25-11, at 2). It is unclear from the record if any no-contact order existed beyond that bail order, or if any such order remained in effect at the time Plaintiff entered the jail.

For several weeks, Mr. Shelton harassed Plaintiff by taking Plaintiff's food trays and making Plaintiff wash Mr. Shelton's laundry. According to Defendants, there is no evidence that any Cape May employees "ever witnessed or were informed that plaintiff had to clean for Shelton or any other blood members." (ECF No. 25-4, at 4–5). Plaintiff strongly disputes this allegation, contending that he informed Defendants about these issues on official correspondence, but does not cite to anything other than the Complaint. (ECF No. 26-1, at 1).

In early July of 2015, the State transferred Mr. Shelton to Camden County. After his departure, other bloods members took Plaintiff's food trays and called him a rat or snitch. (ECF No. 25-4, at 5). Plaintiff contends that he composed a number of correspondence slips for protection detailing the above, but never received a response. (ECF No. 25-4, at 7). Plaintiff did, however, keep copies for himself. (*Id.*). Additionally, although Plaintiff recalls speaking to some defendants regarding those slips, he cannot recall the names of those individuals. (*Id.*).

The parties dispute whether Defendants are in possession of any of those slips and whether Plaintiff handed in the slips in the first place. Plaintiff does not specify to whom he provided the slips and implies that some or all of the Defendants ignored or destroyed his correspondence, or both. (ECF No. 26-1, at 2). Defendants maintain that none of the slips "were or are in the possession of the Defendant[s]" and that "therefore . . . plaintiff never did hand in these . . . slips." (ECF No. 25-4, at 8).

Ultimately, on July 18, 2015, Waladin Snow, an alleged bloods member, attacked Plaintiff, resulting in serious injuries. The parties dispute whether the injuries resulted from a mutual fight or an orchestrated "hit," who initiated the fight, and the integrity of the investigation relating to the incident. (ECF No. 26-1, at 2–3). Plaintiff also contends that Defendants ceded control of the area of the jail where these events took place, to the bloods.

On January 4, 2017, Plaintiff named[2] Cape May County; Sheriff Gary Schaffer; Warden Donald Lombardo; Lieutenant Campbell; Sergeant Prince; Sergeant Faircloth; Sergeant Caldwell; Sergeant Rucci; Correctional Officer Sharp; Correctional Officer Schenck; and Correctional Officer Weatherby as Defendants in this action. Plaintiff brings claims under 42 U.S.C. § 1983, alleging that Defendants violated Plaintiff's rights under the First, Fourth, Eighth, and Fourteenth Amendments.

## II. STANDARD OF REVIEW

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton,* 572 U.S. 650, 656–57 (2014). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Cotton,* 572 U.S. at 657. The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof," the moving party may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

If the moving party meets its threshold burden, the opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence that may show that genuine issues of material fact exist). The non-moving party must at least present

---

[2] Plaintiff also named Correctional Officers Logue and Whitaker in his Complaint, but it appears that neither officer responded to the Complaint, or Plaintiff did not serve the officers with the Complaint. (*See* ECF Nos. 5, 6).

3

probative evidence from which the jury might return a verdict in his favor. *Anderson,* 477 U.S. at 257. Where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 322. "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation,* 912 F.2d 654, 657 (3d Cir. 1990); *see also Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.,* 470 F.3d 535, 538 (3d Cir. 2006) ("To prevail on a motion for summary judgment, the nonmoving party needs to show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial.").

## III.  DISCUSSION

### A. Municipal Liability Under § 1983

The County of Cape May argues that summary judgment is appropriate because Plaintiff has failed to support his claim against a local government entity under 42 U.S.C. § 1983. To succeed on a § 1983 claim, a plaintiff must allege two things: first, a violation of a right under the Constitution, and second, that a "person" acting under color of state law committed the violation. *West v. Atkins,* 487 U.S. 42, 48 (1988); *Piecknick v. Com. of Pa.,* 36 F.3d 1250, 1255–56 (3d. Cir. 1994)). The Supreme Court has established that § 1983's definition of "person" includes municipalities and other local government entities. *Monell v. Dep't of Soc. Servs. of N.Y.,* 436 U.S. 658, 690 (1978).

A plaintiff may not, however, hold a local government unit "liable for the unconstitutional acts of its employees on a theory of *respondeat superior*." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014). To hold such an entity liable under § 1983, plaintiffs must demonstrate that a local government unit adopted a policy or custom and that such policy or custom had been

"the moving force" behind the deprivation of their constitutional rights. *See Monell*, 436 U.S. at 694.

Municipal policy generally requires that a local governing body's officers officially adopt and promulgate a "statement, ordinance, regulation, or decision." *Id.* at 690. A municipal custom, although lacking the formal approval of a policy, refers to those official practices which are "so permanent and well settled as to constitute . . . the force of law." *Id.* at 691.

Under certain circumstances, a municipality's failure to properly train its employees and officers can amount to a "custom" under § 1983. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989). When a plaintiff alleges that a policy "concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Thomas*, 749 F.3d at 222 (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)).

The "first inquiry in any case alleging municipal liability under § 1983 is . . . whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Canton,* 489 U.S. at 385. The County of Cape May may satisfy its burden for summary judgment by showing "that there is an absence of evidence to support the nonmoving party's case," and does so here. *See Celotex*, 477 U.S. at 325. Assuming *arguendo* that there was a violation of a constitutional right, Plaintiff has failed to provide evidence to show that the County contributed to that violation. *See West,* 487 U.S. at 48.

5

Plaintiff alleges that the County of Cape May "facilitated" a "conspiracy of silence" by maintaining a deficient record keeping system for detainee complaints. (ECF No. 1, at 4; ECF No. 26, at 10). He contends that unlike the electronic system at state prisons, the handwritten correspondence system allows the County to avoid liability "when it does not want to be informed of problems" and allows the County to thwart or deny access to the courts. (ECF No. 26, at 10). Plaintiff also contends that the County failed to establish and enforce any policy, practice, or custom to supervise, control, or otherwise prevent the alleged violations in the Complaint. (ECF No. 1, at 7).

As an initial matter, Plaintiff does not explain his theory as to how a deficient recordkeeping system, could prevent a person from say, filing a complaint in federal or state court. To the extent that Plaintiff contends that the system makes it intentionally more difficult to *prove* claims in court, he fails to cite to any evidence to support that theory anywhere in his brief. (ECF No. 26).

For example, Plaintiff fails to identify any specific county policies or customs, or otherwise refer to competent evidence that implies such a policy or custom. *See Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004). Nor does Plaintiff refer to any evidence to demonstrate a pattern of underlying constitutional violations, such as other incidents related to the deficient recordkeeping system. Ultimately, Plaintiff cannot rely solely on his incident "to create a triable issue of material fact on [his] *Monell* . . . claim." *E.g.*, *Katzenmoyer v. Camden Police Dep't*, No. 08-1995, 2012 WL 6691746, at *5 (D.N.J. Dec. 21, 2012); *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (finding that "a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*"); *Estate of Olivas By & Through Miranda v. City*

*& Cty. of Denver*, 929 F. Supp. 1329, 1338 (D. Colo. 1996) (finding that one cannot maintain a *Monell* claim based on a theory of *res ipsa loquitur*).

Consequently, while the allegations in Plaintiff's brief provide interesting speculation, Counsel's unsubstantiated assertions of "fact" do not constitute evidence for the purpose of summary judgment. *E.g.*, *Versarge v. Twp. of Clinton N.J.*, 984 F.2d 1359, 1370 (3d Cir. 1993). Nor does the Court have any obligation "to scour the entire record to find a factual dispute." *E.g.*, *Dawley v. Erie Indemnity Co.*, 100 Fed. App'x 877, 881 (3d Cir. 2004). Accordingly, Plaintiff fails to raise a genuine issue of material fact on his *Monell* claim, and it cannot survive summary judgment.

**B. Fourth Amendment Claims**

Next, Defendants argue that summary judgment is appropriate because Plaintiff fails to allege or support a § 1983 claim based on a violation of the Fourth Amendment.

At the outset, the Court is unable to discern Plaintiff's theory in support of a Fourth Amendment violation. There is no mention of the Fourth Amendment, searches, or seizures, anywhere in Plaintiff's brief. The Complaint contains the conclusory allegations that Defendants violated that amendment but makes no reference to any searches or seizures. (ECF No. 1). These bare allegations, "because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

If there is more to Plaintiff's "Fourth Amendment claims, he certainly has not gone to great pains to explain his theories to the Court." *Goldhaber v. Higgins*, 576 F. Supp. 2d 694, 718 (W.D. Pa. 2007); *see also Turzanski v. Cty. of Burlington*, No. 15-8866, 2018 WL 5874073, at *4 (D.N.J. Nov. 9, 2018). Accordingly, Plaintiff fails to raise a genuine issue of material fact as to whether, under § 1983, Defendants violated his Fourth Amendment rights under color of state law.

## C. Eighth Amendment Claims

Similarly, Defendants argue that summary judgment is appropriate because Plaintiff fails to allege a § 1983 claim based on a violation of the Eighth Amendment. Defendants contend that Plaintiff's claims fail because the Eighth Amendment applies only after a court has convicted and sentenced a person for their crimes. The Court agrees. *E.g.*, *Harvey v. Gloucester Cty. Jail*, No. 18-1797, 2018 WL 4735738, at *3 (D.N.J. Oct. 2, 2018); *see also Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). If Plaintiff seeks to raise failure to protect claims as a pretrial detainee, he must do so under the Fourteenth Amendment, and the Court will address those claims below. *Harvey*, 2018 WL 4735738, at *3.

Accordingly, to the extent that Plaintiff seeks to raise independent Eighth Amendment claims against the Defendants, the Court must grant summary judgment as to those claims.

## D. Claims under the First and Fourteenth Amendments

Next, Defendants contend that Plaintiff fails to allege or raise competent evidence, showing that Defendants caused Plaintiff to suffer a deprivation of rights under the First and Fourteenth Amendments. Although Plaintiff does not delineate his claims, the Court construes the Complaint as setting forth three separate claims, which are that: (1) Defendants ignored or destroyed his grievances in violation of both amendments; (2) Defendants conspired to deny Plaintiff of his rights under both amendments; and (3) Defendants failed to protect Plaintiff under the Fourteenth Amendment.

### 1. Claims Regarding Grievances

First, Plaintiff claims that Defendants ignored or destroyed his correspondence slips, or both, in an attempt to thwart or deprive him of a meaningful grievance procedure, in violation of the First and Fourteenth Amendments.

Generally, the First Amendment confers a "right to petition the Government for redress of grievances," which traditionally involves access to the courts. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 n.17 (3d Cir. 2018); *Horsh v. Clark*, No. 17-316, 2019 WL 1243009, at *5 (W.D. Pa. Mar. 18, 2019). The First Amendment, does not however, "impose any affirmative obligation on the government to listen, to respond or . . . to recognize" a grievance. *E.g.*, *Smith v. Arkansas State Highway Emp.*, Local 1315, 441 U.S. 463, 465 (1979); *see also Minnesota State Bd. Community Colleges v. Knight*, 465 U.S. 271, 285 (1984) ("Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications").

More specifically, there is no constitutional right to an "administrative grievance process or any particular relief . . . through such process." *Horsh*, No., 2019 WL 1243009, at *5 (citing *Jones v. N. C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137–138 (1977)); *Bakhtiari v. Spaulding*, No. 17-16, 2017 WL 2778524, at *14 (M.D. Pa. June 27, 2017) ("Even if the prison provides for a grievance procedure . . . violations of those procedures do not give rise to a civil rights cause of action.").

These claims are equally meritless as due process challenges under the Fourteenth Amendment. "Prisoners are not constitutionally entitled to a grievance procedure and the state creation of such a procedure does not create any federal constitutional rights." *Peterson v. Holmes*, No. 12-865, 2012 WL 5451435, at *7 (D.N.J. Nov. 7, 2012) (quoting *Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997)). Consequently, although the failure to respond to Plaintiff's grievances may implicate other rights, it did "not violate his rights to due process and is not actionable." *Id*. (quoting *Stringer v. Bureau of Prisons*, 145 F. App'x 751, 753 (3d Cir. 2005)).

Accordingly, the Court will grant summary judgment to the extent that Plaintiff specifically challenges the failure to respond to his grievances under the First and Fourteenth Amendment.

2. **Conspiracy Claims**

In their moving papers, Defendants maintain that Plaintiff has never articulated exactly how Defendants violated his First Amendment rights. In response, Plaintiff contends that Defendants conspired to impede his access to the courts by covering up their failure to protect him. Defendants allege that Plaintiff raises this claim for the very first time in his opposition, did not plead a conspiracy claim, and in any event, fails to raise competent evidence in support of a such a claim.

Under our jurisprudence, to "prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." *Jutrowski*, 904 F.3d at 294 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150–52 (1970)). More specifically, a plaintiff must prove that: (1) two or more persons conspired to deprive him of his constitutional rights; (2) one or more of the conspirators performed an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff in his person or property, or deprived the plaintiff of any right or privilege of a citizen of the United States. *Id.* at 294 n.15.

Of course, such rights include the "right to be heard in an impartial forum" and the "right of access to the courts" under the Fourteenth Amendment, as well as the "the right to petition the Government for redress of grievances" under the First Amendment. *Id.* at 294 n.17. Although deprivations of these rights typically involve direct access to the courts, state actors may also deny these rights when they "conspire to cover up constitutional violations." *Id.* at 294. In such instances, a "conspiracy of silence" is actionable because the coordinated conduct impedes a

person's access to the courts and "renders 'hollow' a victim's right to redress in a court of law." *Id.* (quoting *Vasquez v. Hernandez*, 60 F.3d 325, 328–29 (7th Cir. 1995)).

Once a plaintiff alleges that the object of the conspiracy was to deprive him of a federally protected right, he "must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Id.* at 295. (quoting *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184–85 (3d Cir. 2009)). In the absence of direct proof, a plaintiff may rely on circumstantial evidence from which a factfinder can infer a "meeting of the minds" or an "understanding or agreement to conspire." *Id.*

As the Third Circuit illustrated, such circumstantial evidence may include that the alleged conspirators:

> did or said something . . . to create an understanding, the approximate time when the agreement was made, the specific parties to the agreement, the period of the conspiracy, or the object of the conspiracy. And in the context of an alleged conspiracy among police officers, it may manifest as conversations between officers about the incident, allegedly distorted stories . . . , an awareness of conflicting stories[,] and irregularities in the series of official investigations into the incident.

*Id.* (internal quotation marks omitted) (citation omitted).

With those principles in mind, this Court must first address the contention that Plaintiff raises this claim for the first time in his opposition brief. *Josko v. New World Sys. Corp.*, No. 05-4013, 2006 WL 2524169, at *7 (D.N.J. Aug. 29, 2006). Axiomatically, "a plaintiff may not raise new claims for the first time in response to a motion to dismiss or other dispositive motion." *Id.*

After reviewing the Complaint, the Court finds that Plaintiff's conspiracy claim is not properly before the Court. No variation of conspire, conspiracy, common plan, agreement, meeting of the minds, object of the conspiracy, overt act, or in furtherance of the conspiracy, feature anywhere in the Complaint. (ECF No. 1). Plaintiff has retained counsel and is not

11

proceeding *pro se*, as such, this Court "is not required to liberally construe Plaintiff's complaint to make out potential claims." *Litwak v. Tomko*, No.16-446, 2017 WL 4151178, at *5 (M.D. Pa. Sept. 19, 2017) ("Instead, it is the job of Plaintiff's counsel to clearly articulate a federal claim in the complaint."); *Collado v. B'Way Corp.*, No. 16-604, 2016 WL 1572541, at *4 (D.N.J. Apr. 19, 2016).

That said, were the Court to liberally construe the Complaint, the only allegation that could possibly raise a conspiracy claim is that "all of the defendants . . . acted in concert with all of the other defendants for the purpose of infringing and then covering up the violation of the plaintiff's rights." (ECF No. 1, at 6). Nevertheless, Plaintiff cannot rely solely on this bare conclusion. *Iqbal*, 556 U.S. at 679.

Such an allegation might generously specify the object of two conspiracies, a conspiracy before the fact to fail to protect Plaintiff and a conspiracy after the fact to "cover up" those failures. The Complaint fails, however, to allege facts that suggest any sort of agreement between the Defendants.

In his brief, Plaintiff argues that the allegation that unspecified Defendants essentially ignored his correspondence is sufficient to plead a conspiracy. The Court rejects that assertion. With regard to a conspiracy before the fact, that allegation, standing alone, does not raise a reasonable inference that Defendants ever communicated with each other or came to any sort of agreement.

As to a conspiracy after the fact, the Complaint does not contain relevant factual allegations that took place after the attack on Plaintiff. Plaintiff does allege in his brief that Defendants destroyed records and tainted the investigation, but the Complaint contains no such allegations.

Accordingly, the Court finds that Plaintiff's § 1983 conspiracy claims are not properly before the Court and will grant summary judgment as to these claims.

Although not necessary to the Court's disposition, had Plaintiff properly pleaded these claims, the Court would alternatively summary judgment for failure to raise a genuine issue of material fact. Plaintiff's brief alleges that a conspiracy existed, but his brief contains no citations to any competent evidence. Plaintiff, cognizant of this lack of evidence, compares his case to the *Jutrowski* case, in which officers engaged in a conspiracy of silence to cover up their wrongdoings.

The plaintiff in *Jutrowski*, however, relied on deposition testimony and documentary evidence to raise a genuine issue of material fact through circumstantial evidence. *Jutrowski*, 904 F.3d at 295–297. For example, Mr. Jutrowski offered testimony from the officers that they discussed the incident before they filed reports or appeared for depositions, to "straighten out" the sequence of events. *Id*. Mr. Jutrowski also emphasized conflicting testimony and material omissions from the documentary evidence. *Id*.

In the instant case, if such evidence exists, Plaintiff did not cite to any such evidence in his opposition. Once again, Counsel's unsubstantiated assertions of "fact" do not constitute evidence for the purpose of summary judgment. *E.g.*, *Versarge*, 984 F.2d at 1370. Nor does the Court have any obligation "to scour the entire record to find a factual dispute." *E.g., Dawley*, 100 Fed. App'x at 881. Accordingly, the Court would also grant summary judgment on these conspiracy claims for Plaintiff's failure to raise a genuine issue of material fact.

### 3. Failure to Protect Claims

Finally, Defendants argue that summary judgment is appropriate because Plaintiff fails to raise competent evidence as to his failure to protect claims under the Fourteenth Amendment. As discussed above, as a pretrial detainee, Plaintiff's claims arise from the Fourteenth Amendment's

Due Process Clause, rather than the Eighth Amendment's prohibition on cruel and unusual punishment. *Harvey*, 2018 WL 4735738, at *3.

Nevertheless, courts apply the Eighth Amendment's "deliberate indifference" standard when analyzing failure to protect claims in this context, "as the due process rights of a pretrial detainee are at least as great as the Eighth Amendment rights of a convicted prisoner." *Id*. (quoting *Mazariegos v. Monmouth Cty. Corr. Inst.*, No. 12-5626, 2016 WL 6208261, at *7 (D.N.J. Oct. 24, 2016)). To properly state a failure to protect claim, a plaintiff must "plead facts that show: (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

In this context, "deliberate indifference" is a subjective standard. *Bistrian*, 696 F.3d at 367–69. The official "must actually have known or been aware of the excessive risk to inmate safety" and it is "not sufficient that the official should have known of the risk." *Id.* at 367. In the face of summary judgment, the Third Circuit has held that a "§ 1983 plaintiff must produce evidence supporting each individual defendant's personal involvement in the alleged violation to bring that defendant to trial." *Jutrowski*, 904 F.3d at 291.

In the instant case, discovery has ended in this matter, and Plaintiff appears to concede that "he can only identify those he asked or handed complaint slips to [,] . . . cannot specifically identify their actions with any more detail. . . [, and] cannot be sufficiently specific in alleging . . . [any Defendants'] individual roles." (ECF No. 26, at 8). In contrast, Defendants individually demonstrate how there is no evidence to show that they were actually aware of the risk to Plaintiff or that the risk was serious. More specifically, Defendants demonstrate that there is no evidence

14

to show that any of them received or read Plaintiff's correspondence, or that the particular correspondence would have placed them on notice of any potential threat of harm.[3] (ECF No. 25-5, 19–25).

Defendants also emphasize that Plaintiff could recall speaking with some of the Defendants on these issues but could not identify those Defendants. (ECF No. 25-4, at 7, ¶¶ 37–38). In the case of Defendant Campbell, Plaintiff could recall speaking to him but testified that he could not recall the substance of the conversation. (ECF No. 25-5, at 22). Additionally, Defendants show that there is no evidence to demonstrate that they had knowledge "that Waladin Snow was a member of the bloods." (ECF No. 25-5, at 21). In turn, even if Plaintiff had placed them on notice that he had reason to fear the bloods, they would not have known to protect him from Mr. Snow. (ECF No. 25-5, at 21).

Ultimately, if Plaintiff possesses evidence to rebut these contentions as to each individual Defendant, he has not presented that evidence to the Court. Although Plaintiff believes that Defendants are obfuscating the truth[4] and that one or more of them must have intercepted or destroyed his correspondence, he appears unable to ascertain which "individual . . . was the perpetrator of [each] unconstitutional deprivation." *Jutrowski*, 904 F.3d at 292 (quoting *Howell v. Cataldi*, 464 F.2d 272, 282 (3d Cir. 1972)). As the Third Circuit has held, this "is not a sufficient basis to survive summary judgment." *Id*.

---

[3] For example, Defendant alleges that some of Plaintiff's correspondence referred only to his "no contact order" with Mr. Shelton and did not address the seriousness of the risk of harm. (ECF No. 25-5, at 19).

[4] As discussed above, Plaintiff's remedy in such a situation, would have been to plead, and then raise competent evidence to show, a § 1983 conspiracy.

Accordingly, Plaintiff fails to raise a genuine issue of material fact as to his failure to protect claims under the Fourteenth Amendment, and the Court will grant summary judgment as to these claims.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment. An appropriate order follows.

Dated: June 25, 2019

                                                     s/Robert B. Kugler
                                                     ROBERT B. KUGLER
                                                     United States District Judge